**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| KEVIN BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL PARTS DISTRIBUTION, LLC, dba ADVANCE AUTO PARTS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:25-cv-01840<br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Kevin Brown (hereinafter "Plaintiff") on behalf of himself and all others similarly situated, by and through undersigned counsel, brings this lawsuit against Defendant General Parts Distribution, LLC dba Advance Auto Parts, and based upon information and belief, except for those allegations pertaining to Plaintiff which are based on his personal knowledge, and investigation of his counsel, alleges:

**INTRODUCTION**

1. Kevin Brown, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendant, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), and its implementing regulations and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1, et seq. (the "Remedies Restoration Act"). Mr. Brown has been using a wheelchair for the past 32 years following a motorcycle accident in 1993 that resulted in a spinal cord injury at the cervical vertebrae number five (C5) in his neck. He underwent a posterior C5 cervical fusion surgery, which resulted in quadriplegia and a

neurogenic bladder, substantially limiting his major life activities, including walking, standing, and bladder control.

2. Defendant General Parts Distribution, LLC collectively owns, leases, and/or operates at least 152 Advance Auto Parts retail stores within in the state of Illinois and 6 within the Southern District of Illinois. Plaintiff's claims arise from his own experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendant ("Defendant's Facilities"), and from site investigations at two (2) of Defendant's Facilities also finding excessive sloping conditions

3. Defendant discriminated against Plaintiff – and other similarly situated mobility impaired persons – by implementing policies and practices that consistently violate the ADA and Remedies Restoration Act's accessibility guidelines and routinely result in access barriers at Defendant's facilities. The ADA expressly authorizes the injunctive relief aimed at modification of existing policies, practices, or procedures that Plaintiff seeks in this action.

4. Specifically, Plaintiff experienced difficulty and risk of harm navigating the parking lot and path of access to Defendant's business due to excessive sloping, all in violation of the ADA and Restoration Act, in that those violations exist due to inadequate compliance policy or practice that leads to, as in the case of Defendant's parking lots, a systematic failure to maintain accessibility features at Defendant's properties.

5. The ADA and Remedies Restoration Act expressly authorize the injunctive relief aimed at modification of existing policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also

> include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . .

42 U.S.C. § 12188(a)(2).

6. Based on the extensive factual investigation performed by the Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have parking lots and paths of travel that are inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendant employ with regard to the design, construction, alteration, maintenance, and operation of its facilities causes access barriers and/or allows them to develop and persist at Defendant's facilities.

7. Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendant to (i) remediate all access barriers within the Parking Areas of Defendant's Facilities, and (ii) modify their existing policies to ensure that Defendant's Facilities comply with the ADA's implementing regulations' excessive sloping requirements, 28 C.F.R. §§ 36.101 et seq. Doing so will ensure Plaintiff's full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendant's services.

8. Plaintiff seeks declaratory, injunctive, and equitable relief, and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Remedies Restoration Act and also seeks statutory damages under the Remedies Restoration Act.

9. Unless Defendant is required to remove the access barriers described below, and required to change their policies and practices so that access barriers do not reoccur at Defendant's facilities, Plaintiff and the proposed Class will continue to be denied full and equal

access to those facilities as described and will be deterred from fully using Defendant's facilities so long as Defendant's unlawful discriminatory practices continue.

10. Defendant's discrimination sends a message that it is acceptable for public accommodations to adopt policies, procedures, and practices that deprive mobility-impaired individuals of the opportunity to full and equal enjoyment of, and a meaningful opportunity to participate in and benefit from Defendant's services.

11. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities … Where appropriate, injunctive relief shall also include requiring the … modification of a policy[.]

42 U.S.C. § 12188(a)(2).

12. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a. Defendant remediate excessive sloping with the Parking Areas at Defendant's Facilities, consistent with the ADA's implementing regulations;

b. Defendant modify their existing maintenance policy to ensure that the excessive sloping conditions with the Parking Areas at Defendant's Facilities do not reoccur; and

c. Plaintiff's representatives shall monitor Defendant's Facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a and 6.b has been implemented and will remain in place.

13. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the

benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

14. In addition, Plaintiff's claim for minimum statutory damages pursuant to § 20 of the Remedies Restoration Act is asserted as an Illinois statewide class claim pursuant to Fed. R. Civ. Pr. 23(b)(3).

**PARTIES AND JURISDICTION**

15. Plaintiff Kevin Brown is, and at all times relevant hereto was, a resident of Boone County in the State of Missouri. Plaintiff is an individual with disabilities as defined by the ADA, which substantially limits his major life activities, including but not limited to: walking and standing. Plaintiff uses a wheelchair for mobility purposes and is a member of a protected class under the ADA.

16. Defendant General Parts Distribution, LLC dba Advance Auto Parts ("Advance Auto") is a limited liability company organized under the laws of North Carolina and registered with the Illinois Secretary of State to conduct business in St. Clair County and all other counties within Illinois.

17. At all times mentioned and referenced within this Complaint, Defendant's corporate structure, to include but not limited to all parent corporate entities, subsidiaries, affiliates, agents, shared management and directorships, franchisors and franchisees, employees, and all other contractors were under shared or common management, and in control of each other

within this corporate structure, and were acting within this scope with the permission and/or directives regarding the issues of ADA compliance across all ownership interests.

18. Plaintiff asserts that Defendant, at all times mentioned in this Complaint, was the alter ego, affiliate, agent and/or employee and/or employer of its related entities, under shared management, ownership, and common control, and in doing the things alleged in this Complaint was acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of its related entities.

19. At all times mentioned and referenced within this Complaint, Advance Auto maintained lease operating agreements with other persons or entities who maintained ownership interests in the leased premises for those retail locations not owned directly by Advance Auto. Under the ADA, regardless of the lease provisions, Advance Auto is responsible for ensuring that all Advance Auto retail locations maintain compliance under the ADA.

20. Defendant's Facilities are places of public accommodation as defined in 42 U.S.C. § 12181(7) and Defendant is subject to the requirements of the ADA and the Remedies Restoration Act.

21. This is an action for declaratory and injunctive relief pursuant to Title III of the ADA as well as the Remedies Restoration Act and for statutory damages pursuant to § 20 of the Remedies Restoration Act.

22. This Court has original, federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

23. Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district and has otherwise purposely availed itself of the

markets in Illinois through Defendant's placement of retail facilities, in Illinois to render the exercise of jurisdiction by this Court permissible under the traditional notions of fair play and substantial justice.

24. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events or omissions or both giving rise to Plaintiff's claims occurred, Defendant's property is located, and Defendant does business.

## FACTUAL ALLEGATIONS

### I. Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities.

25. On or about October 2, 2024, Plaintiff attempted to but was deterred from patronizing and/or gaining equal access as a disabled patron at the Advance Auto Parts retail store located at 3216 Nameoki Rd., Granite City, IL 62040 ("Subject Property"), where he experienced unnecessary difficulty and risk of harm exiting and entering his vehicle and navigating the parking lot and path of access to Defendant's business due to excessive sloping that required him to exercise extra care. Plaintiff, who sells wheelchairs to individuals and large medical providers, was in the area visiting patients or providers to deliver or discuss wheelchair sales during a business trip to Southern Illinois. As Plaintiff, who relies on a wheelchair for mobility, attempted to transfer from his vehicle to his wheelchair at the location, the excessive slopes in the purportedly accessible parking areas and access aisles caused the wheelchair to become unsteady, forcing him to exert significant effort to stabilize it and prevent it from rolling away. These hazardous conditions, along with other discriminatory ADA and Remedies Restoration Act violations as set forth in more detail below, made it unreasonably difficult for Plaintiff to safely access the store to purchase a mirror wedge for his vehicle, an item he successfully obtained despite the challenges and for which he retains a receipt.

26. On or about September 11, 2025, Plaintiff attempted to but was deterred from patronizing and/or gaining equal access as a disabled patron at the Advance Auto Parts retail store located at 3216 Nameoki Rd., Granite City, IL 62040 ("Subject Property"), where he experienced unnecessary difficulty and risk of harm exiting and entering his vehicle and navigating the parking lot and path of access to Defendant's business due to excessive sloping that required him to exercise extra care. Plaintiff, who sells wheelchairs to individuals and large medical providers, was in the area visiting patients or providers to deliver or discuss wheelchair sales during a business trip to Southern Illinois. As Plaintiff, who relies on a wheelchair for mobility, attempted to transfer from his vehicle to his wheelchair at the location, the excessive slopes in the purportedly accessible parking areas and access aisles caused the wheelchair to become unsteady, forcing him to exert significant effort to stabilize it and prevent it from rolling away. These hazardous conditions, along with other discriminatory ADA and Remedies Restoration Act violations as set forth in more detail below, made it unreasonably difficult for Plaintiff to safely access the store to purchase glass cleaner and a mirror wedge for his vehicle, items he successfully obtained despite the challenges and for which he retains a receipt.

27. Due to Plaintiff's quadriplegia, all non-level transfers are particularly difficult and potentially dangerous. Plaintiff's manual wheelchair is equipped with wheel locks, but when navigating uneven terrain such as the excessively sloped parking area at the Subject Property, the casters or propulsion wheels do not set level, and the angles cause the wheelchair to move easily—sometimes tilting forward, backward, or sideways. This instability increases the risk of falls into or out of the vehicle or onto the ground, potentially causing shoulder injuries, cuts, bruises, decubitus ulcers, broken bones, or other serious harm.

28. Plaintiff lives within 135 miles of the Subject Property, residing in Columbia, Missouri. Because the Subject Property is located in the Southern District of Illinois on

thoroughfares that he frequents routinely on business travel, he is occasionally in the area where the Subject Property is situated and travels in and about the immediate vicinity periodically. Plaintiff visits Southern Illinois, including Granite City, three to four times a year to sell wheelchairs, a routine he has maintained for several years. The Subject Property is conveniently located close to the interstate, making it a practical stop during his trips. Despite the accessibility challenges and risks posed by the excessive sloping, Plaintiff intends to return to the Subject Property at least three times annually, both for convenience during his business travels and to ascertain whether the facility remains in violation of the ADA.

29. As a result of Defendant's non-compliance with the ADA and Remedies Restoration Act, Plaintiff's ability to access and safely use Defendant's facilities has been significantly impeded. Plaintiff will be deterred from returning to and fully and safely accessing Defendant's facilities due to the discrimination on the basis of disability he has previously encountered there. Defendant's discriminatory conduct will continue so long as its facilities remain non-compliant with the ADA's parking and lane of access regulations, and those violations presently exist due to Defendant's inadequate compliance policy or practice that have led, and in the future will lead, to a systemic failure to maintain ADA-required accessibility features at Defendant's properties.

30. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities and will continue to experience unlawful discrimination on the basis of disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendant's facilities, in violation of his civil rights under the ADA and Remedies Restoration Act.

31. As an individual with a mobility disability who uses a wheelchair, Plaintiff is directly interested in whether public accommodation, like the Subject Property, have adequate

compliance policies or practices that will lead to both the maintenance of ADA—required accessibility features at Defendant's properties, and remediation of architectural barriers that impede full accessibility to those accommodations by individuals with mobility—related disabilities.

32. Plaintiff's access to the Subject Property and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Subject Property, including those set forth in this Complaint.

33. Plaintiff recently traveled to the Subject Property as a patron and as an independent advocate for the disabled, encountered and/or observed the barriers to access that are detailed in this Complaint, engaged those barriers where physically possible, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at the Subject Property.

34. Plaintiff has a fundamental right as established under the ADA to patronize any place of public accommodation as any person who is not disabled has.

35. Plaintiff's day-to-day life has been negatively affected by the barriers to entry at the Subject Properties, as his fundamental right to patronize any place of public accommodation at his choosing has been diminished by Defendant's non-compliance with the ADA. Plaintiff has no obligation to only patronize places of public accommodation that are ADA compliant.

36. If barriers to entry are not removed at the Subject Property, the barriers will place undue hardship, cause Plaintiff loss of opportunity, and unduly force Plaintiff to "search" for a place of public accommodation to patronize that is ADA compliant.

37. Plaintiff intends on revisiting the Subject Property to enjoy the same experiences, goods, and services available to Defendant's non-disabled patron as well as for Advocacy Purposes, but does not intend to continue to repeatedly re-expose himself to the ongoing barriers to equal access and engage in the futile gesture of attempting to patronize the Subject Property, a business and places of public accommodation known to Plaintiff to have numerous and continuing barriers to equal access for wheelchair users.

## II. Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities.

38. As the owner and manager of its properties, Defendant is required to create, practice and enforce specific centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of Defendant's Facilities in order to ensure compliance with the ADA.

39. To date, Defendant's centralized alteration, maintenance, and operational policies, practices, or procedures have systematically and routinely violated the ADA and the Remediation Restoration Act and their implementing regulations by altering or maintaining its Facilities so that they are not readily accessible and are usable, by failing to remove architectural barriers, and by failing to maintain or operate its Facilities so that the accessible features of Defendant's Facilities remain accessible.

40. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

a. 3216 Nameoki Road, Granite City, IL 62040

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 3.9%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 3.6%;

b. 1274 Vandalia Street, Collinsville, IL 62234

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 3.1%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 3.1%;

c. 1604 Camp Jackson Road, Sauget, IL 62206

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 2.2%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 2.5%;

d. 2223 North Cicero Avenue, Chicago, IL 60639

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 4.35%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 2.95%.

e. 2320 West 47th Street, Chicago, IL 60609

i. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 2.5%.

f. 2604 North Elston Avenue, Chicago, IL 60647

i. The surfaces of one or more of the purportedly accessible access aisles had a cross slope of 2.95%.

g. 2652 West Chicago Avenue, Chicago, IL 60622

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 2.6%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 3.55%;

h. 5622 West Roosevelt Road, Chicago, IL 60644

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 2.45%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 2.5%;

i. 6225 South Pulaski Road, Chicago, IL 60629

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 3.05%;

j. 10100 Ridgeland Avenue, Chicago, IL 60415

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 2.6%.

k. 6101 West Ogden Avenue, Cicero, IL 60804

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 5.7%;

ii. The surfaces of one or more of the purportedly accessible access aisles had a downward slope of 2.95%; and

l. 5001 W. Madison Street, Chicago, IL 60644

i. The surfaces of one or more of the purportedly accessible spaces had a downward slope of 6.6%.

41. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendant and found the following violations, which are illustrative of the fact that Defendant implements policies and practices that routinely result in accessibility violations:

42. By failing to make the company's locations accessible and usable to wheelchair users, Defendant's Facilities, public accommodations subject to Title III of the ADA and the Remedies Restoration Act, deprive mobility-impaired individuals of the full benefits of Defendant's services – all benefits Defendant affords nondisabled individuals – thereby increasing the sense of isolation and stigma among those Americans that Title III of the ADA and the Remedies Restoration Act were meant to redress.

43. As evidenced by the widespread failures to make Defendant's locations accessible and usable to wheelchair users, absent a change in Defendant's existing practices and procedures, these excessive conditions and the accessibility barriers they present will continue to reoccur at Defendant's locations even after they have been remediated.

44. As the owner and manager of their properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

45. To date, Defendant's centralized design, construction, alteration, maintenance, and operational policies, practices, and procedures have systematically and routinely violated the ADA and the Remedies Restoration Act by designing, constructing, and altering facilities so that they are not readily accessible and usable, by failing to remove architectural barriers, and by

failing to maintain and operate facilities so that the accessible features of Defendant's facilities are maintained fully accessible to individuals with mobility-related disabilities.

46. The fact that individuals with mobility-related disabilities are denied full and equal access to Defendant's numerous locations, and the fact that each of these facilities denies access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendant's systemic disregard for the civil rights of individuals with disabilities.

47. Defendant's systemic access violations demonstrate that Defendant either employs policies and practices that fail to design, construct, and alter its facilities so that they are readily accessible and usable and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility.

48. As evidenced by the widespread inaccessibility of Defendant's parking facilities, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated.

49. As a result of Defendant's non-compliance with the ADA and Remedies Restoration Act, Plaintiff has been denied the benefit of full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, or accommodations, and has been denied participation in and has been treated unequally by Defendant.

50. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendant's network of facilities.

**CLASS ASSERTIONS**

51. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) and, with respect to the Remedies Restoration Act minimum statutory damages sub—class, Fed. R. Civ. P. 23(b) on behalf of himself and those similarly situated.

52. Plaintiff seeks certification of the following Illinois statewide Class under the ADA and Remedies Restoration Act:

All wheelchair users with qualified mobility disabilities who attempted to patronize and were denied the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of any Advance Auto Part store in the State of Illinois on the basis of disability because such persons encountered accessibility barriers within the Parking Areas of any Advance Auto Part store operated and owned or leased by General Parts (the "Injunctive Class").

Plaintiff reserves the right to amend or modify the Injunctive Class definition in connection with a motion for class certification or the result of discovery or both.

53. Plaintiff also seek certification of the following Illinois minimum statutory damages class under the Remedies Restoration Act:

All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations of any Advance Auto Part store in the State of Illinois on the basis of disability because such persons encountered accessibility barriers within the Parking Areas of any Advance Auto Part store operated and owned or leased by General Parts (the "Damages Sub-Class").

54. Plaintiff reserves the right to amend or modify the Damages Sub-Class definition in connection with a motion for class certification or the result of discovery or both. The Illinois minimum statutory damages class seeks class wide damages pursuant to § 20 of the Remedies Restoration Act in the amount of $4,000 per violation based on Defendant's wrongful policy and practice of failing to provide full and equal access to Plaintiff and mobility-impaired individuals as asserted herein. This action does not seek class recover for actual damages, personal injuries,

or emotional distress that may have been caused by Defendant's conduct asserted herein.

55. This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Illinois Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

b. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

c. <u>Common Question of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to and use and enjoyment of Defendant's Facilities and/or services due to Defendant's failure to make Defendant's Facilities fully accessible and independently usable as above, described.

d. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

56. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because

Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

57. This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the Illinois Damages Sub-Class. Plaintiff asserts the subclass satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in the preceding paragraph and its sub-parts. In addition:

a. Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact predominate over any other questions affecting only individual members of the Illinois Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's encounters with mobility-impaired individuals at its Advance Auto Parts stores and facilities.

b. Superiority: A class action is superior to the other available methods for fair and efficient adjudication of this controversy because:

i. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii. The individual claims of the Class Members are relatively modest compared with the expense of litigation the claims, thereby making it impracticable, unduly burdensome, and expensive – if not totally impossible – to justify individual actions;

iii. When Defendant's liability has been adjudicated, the claims of all Class Members can be determined by the Court and administered efficiently in a manner

far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

iv. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v. Plaintiff knows of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action;

vi. A class action will assure uniformity of decision among Class Members;

vii. Prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

viii. The interest of Class Members in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action.

58. Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATION OF THE ADA, TITLE III**
**[42 U.S.C. §§ 12101 et seq.]**

59. Plaintiff restates each and every allegation set forth in this Class Action Complaint with the same force and effect as if more fully set forth herein

60. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq., was in full force and effect and applied to Defendant's conduct.

61. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to Defendant's conduct.

62. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

63. Defendants own, lease, and/or operate Advance Auto Part stores, including the Subject Properties, that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

64. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations," 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), and from denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. §§ 36.202.

65. Pursuant to Title III of the ADA and its implementing regulations, it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the

known disability of an individual with whom the individual or entity is known to have a relationship or association," 42 U.S.C. § 12182(b)(1)(E).

66. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability, 42 U.S.C. § 12182(b)(1)(D).

67. Title III and its implementing regulations define discrimination to include the following:

a. Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b. Failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1);

c. For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and

d. Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

68. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183, 42 U.S.C. § 12188(a)(1).

69. Plaintiff is informed and believes, and based thereon asserts, that Defendant's Facilities were altered, designed, or constructed after the effective date of the ADA.

70. The ADA requires the accessible features of Defendant's Facilities, which include Parking Areas of those facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

71. The architectural barriers described herein demonstrate that Defendant's Facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs, in the first instance, and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

72. Furthermore, the architectural barriers described herein demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

73. Defendant's repeated and systemic failures to remove architectural barriers, to maintain the accessible features of Defendant's Facilities, and/or modify their existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

74. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

75. Furthermore, the architectural barriers described above demonstrate that Defendant have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

76. Defendant's repeated and systemic failures to design, construct, and alter its facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

77. Defendant is required to provide individuals who use wheelchairs full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

78. Defendant has failed, and continues to fail, to provide individuals who use wheelchairs with full and equal enjoyment of its facilities.

79. Defendant's conduct is ongoing and continuous, and Defendant's conduct has harmed the Plaintiff.

80. Unless Defendant are restrained from continuing their ongoing and continuous course of conduct, Defendant will continue to violate the ADA and inflict injury upon Plaintiff and the class.

81. Given that Defendant have not complied with the ADA's requirements to make Defendant's Facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS CIVIL RIGHTS REMEDIES RESTORATION ACT
## [775 ILCS 60/1 et seq.]

82. Plaintiff restates each and every allegation set forth in this Class Action

Complaint with the same force and effect as if more fully set forth herein.

83. At all times relevant to this action, The Remedies Restoration Act was in full force and effect and applied to Defendant's conduct.

84. Defendant violated the Remediation Restoration Act by the company's acts and omissions, as set forth herein.

85. Defendant discriminates against Plaintiff and denied him full and equal access to Defendant's Facilities and services on the basis of his disability.

86. Pursuant to § 15 of the Remedies Restoration Act, the conduct of Defendant in violation of the ADA, as set forth herein, also constitutes a violation of the Remedies Restoration Act.

87. Plaintiff was harmed and the discriminatory conduct of Defendant was a substantial factor in causing Plaintiff's harm.

88. The actions of Defendant were and are in violation of the Remedies Restoration Act, 775 ILCS 60/1 *et seq*., and therefore Plaintiff is entitled to injunctive relief remedying the discrimination.

89. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Plaintiff further seeks statutory minimum damages pursuant to § 20 of the Remedies Restoration Act for every individual violation; that is, each time a mobility-impaired, wheelchair using individual attempted to independently access one of Defendant's Advance Auto Parts stores in Illinois. This action does not seek class recover for actual damages, personal injuries, or emotional distress that may have been caused by Defendant's conduct asserted herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays this Court enter:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's Facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

B. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (1) directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its Facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (2) directs Defendant to implement, modify, and create maintenance procedures to prevent the reoccurrence of excessive sloping in the parking areas and access aisles of their retail stores and other places of public accommodation post-remediation; and (3) directs Defendant to monitor all its places of public accommodation to ensure compliance with the ADA, the Remedies Restoration Act, and the orders of this Court;

C. An Order certifying the Classes proposed by Plaintiff, naming Plaintiff as Class representative, and appointing his counsel, Jonathan F. Andres, Esq. as Class counsel;

D. An Order awarding minimum statutory damages, in accordance §20 of the Remedies Restoration Act, to the Damages Sub-Class;

E. An Order directing Defendant, pursuant to 28 C.F.R. §36.211, to fulfill their continuing duty to maintain their accessible features and equipment so that the facility remains accessible to and useable by individuals with disabilities to the full extent required by Title III of the ADA;

F. An Order directing Defendant to implement and carry out effective policies, practices, and procedures to maintain the accessible features and equipment pursuant to 28 C.F.R. §36.302 and 28 C.F.R. §36.211;

G. An Order awarding reasonable attorneys' fees, costs of suit, including expert fees, and litigation expenses pursuant to 42 U.S.C. §12205 and 775 ILCS 60/20 and an award of monitoring fees associated with insuring that the Defendant are in compliance with the ADA;

H. An Order awarding prejudgment interest pursuant to 735 ILCS 5/2-1303(a);

I. An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders; and

J. An Order granting whatever other relief the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act, the Remedies Restoration Act or otherwise.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all counts and claims so triable.

**Dated**: September 29, 2025

Respectfully submitted,

**JONATHAN F. ANDRES, P.C.**

By: /s/ Jonathan F. Andres

Jonathan F. Andres, IL06205586
1127 Hoot Owl Rd.
St. Louis, MO 63005
(636) 633-1208
andres@andreslawpc.com

*Attorney for Kevin Brown*

**DEFENDANT TO BE SERVED:**

General Parts Distribution, LLC
c/o National Registered Agents, Inc., Reg. Agent
208 S. LaSalle St. Suite 814
Chiciago, IL 60604